UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| **Marcus Coleman Jackson**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**LiveXchange Technologies, Inc.** d/b/a **GigCX Marketplace**,<br><br>Defendant. | No.<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

Plaintiff, Marcus Coleman Jackson ("Plaintiff"), sues the Defendant, LiveXchange Marketplace, Inc., doing business as GigCX Marketplace (hereafter "Defendant" or "Gig CX") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for unpaid minimum and overtime wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

2. This lawsuit also arises under the Colorado Minimum Wage Act ("CMWA") and its implementing regulations, the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") for Defendant's failure to pay Plaintiff and other similarly-situated employees all earned minimum and overtime wages.

-1-

3. Plaintiff brings this action on behalf of himself and all similarly-situated current and former employees of Defendant who worked as Customer Service Agents[1] and were classified by Defendant as independent contractors.

4. Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendant for its unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

5. Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendant for its unlawful failure to pay minimum wage and overtime due and owing Plaintiff and others similarly-situated in violation Colorado law.

6. Plaintiff brings a collective action under the FLSA to recover the unpaid minimum wages and overtime owed to him individually and on behalf of all other similarly-situated employees, current and former, of Defendant. Members of the Collective Action are referred to as the "Collective Members."

7. Additionally, Defendant's failure to compensate Plaintiff and all others similarly situated in accordance with the minimum wage and overtime laws of the State of Colorado violates Colorado law. Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Colorado wage laws. Members of the Rule 23 Class Action are referred to as the "Class Members."

---

[1] For the purposes of this Complaint, "Customer Service Agents" is exclusively a job title used for the purpose of classifying the putative class of similarly situated individuals, is not necessarily the job title of the Plaintiff and putative class, and has no bearing or relation to any specialization, skill, education, training, or other qualification that might otherwise be associated with such a job title.

8. The Collective Members are all current and former employees who worked as Customer Service Representatives for Defendant and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

9. The Class Members are all current and former employees who worked as Customer Service Agents for Defendant in the State of Colorado and were classified as independent contractors at any time starting six years before this Complaint was filed, up to the present.

10. Defendant operates as GigCX Marketplace and describes itself as "a cutting-edge platform for sourcing, recruiting and managing global on-demand customer experience talent." *See* https://www.livexchange.com/gigcx-marketplace (last visited June 27, 2024).

11. GigCX is essentially a staffing agency which allows its clients to fill their customer service needs through GigCX's app-based platform.

12. At all relevant times, GigCX has operated pursuant to a policy and practice of intentionally misclassifying Plaintiff and all other similarly-situated employees as independent contractors.

13. At all relevant times, pursuant to this misclassification, Defendant has willfully refused to pay minimum wage and overtime.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States. This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the District of Colorado, and Defendant regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

**PARTIES**

16. At all material times, Plaintiff is an individual residing in Aurora, Colorado, and is a current employee of Defendant.

17. At all material times, Plaintiff regularly performed work for Defendant in Aurora, Colorado.

18. At all relevant times, GigCX was Plaintiff's employer under the FLSA and Colorado law. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. Colorado law adopts this definition. At all relevant times, GigCX had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment. As a person who acted in the interest of GigCX in relation to the company's employees, GigCX is subject to liability under the FLSA and Colorado law.

19. Plaintiff, in his work for Defendant, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

20. At all relevant times, Plaintiff, in her work for Defendant, was engaged in commerce or the production of goods for commerce.

21. At all relevant times, Plaintiff, in her work for Defendant, was engaged in interstate commerce.

22. Plaintiff, in her work for Defendant, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

23. Defendant does business as GigCX Marketplace and provides Customer Service Agents to its clients nationwide.

24. Customer Service Agents, including Plaintiff are required to download Defendant's proprietary software on their phones and/or computers.

25. Defendant then communicates to its Customer Service Agents through its software platform which it uses to assign and control the work of Plaintiff, the Collective Members and Class Members.

26. Defendant assigns its Customer Service Agents, including Plaintiff, the Collective and the Class Members, to job vacancies that Defendant needs to fill for its clients.

27. Plaintiff was hired by Defendant on or about August 15, 2023.

28. GigCX enticed Plaintiff with the opportunity to begin work at $17.00 per hour while working from home.

29. However, GigCX also required Plaintiff to complete a two-week training program.

30. During this training program, Plaintiff worked approximately fifty (50) hours each week.

31. However, GigCX only paid Plaintiff $400.00 in total, falling far short of its minimum wage and overtime wage obligations to Plaintiff under the FLSA and Colorado law.

32. At all relevant times, Defendant has determined the Plaintiff, the Collective Members' and the Class Members' rates of pay.

33. Rather than classify Plaintiff as an employee, Defendant classified him as an independent contractor.

34. Defendant required Plaintiff, the Collective Members and the Class Members to abide by Defendant's formal written policies and handbooks.

35. Defendant required Plaintiff, the Collective Members and the Class Members to abide by Defendant's uniform and attire polciy.

36. Defendant prescribes the manner in which Plaintiff, the Collective Members and the Class Members record their hours worked through Defendant's company-wide timekeeping policies.

37. Consistent with Defendant's common policy and practice, Plaintiff and others similarly situated individuals have been intentionally misclassified by Defendant as independent contractors in and effort by Defendant to minimize labor costs and maximize profits.

38. The FLSA applies to Plaintiff and all individuals similarly situated at all times during which they worked for Defendant. No exceptions or exemptions to the FLSA apply to Plaintiffs and those similarly situated.

39. Upon information and belief, Defendant employed thousands of Customer Service Agents throughout the relevant time period without paying minimum wage and overtime, and while denying them the rights and benefits due an employee.

40. At all relevant times, Defendant directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff and similarly situated individuals.

41. At all relevant times, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to other putative Collective Members and Class Members.

42. Plaintiff, the Collective Members and the Class Members incurred financial loss, injury, and damage as a result of Defendant's business practice of misclassifying them as independent contractors and failing to pay them a minimum wage and overtime pay.

43. Defendant's misclassification of Plaintiff, the Collective Members and the Class Members was willful.

44. Defendant knew or should have known that it was improper to classify Plaintiff, the Collective Members and the Class Members as independent contractors.

45. Plaintiff, the Collective Members and the Class Members cannot "elect" to be treated as employees or independent contractors. Despite this, Defendant unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective and Class to waive their statutory rights and elect to be treated as independent contractors.

46. Any contract which attempts to have workers in the putative Collective and Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

47. The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract. Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

48. Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

49. The totality of circumstances surrounding the employment relationship between Defendant, Plaintiff, the Collective Members and the Class Members establishes economic dependence on Defendant and employee status. Plaintiff, the Collective Members and the Class Members are not in business for themselves and truly independent, but rather are economically dependent upon Defendant. The putative Collective and Class are not engaged in occupations or businesses distinct from that of Defendant. Instead, Plaintiff, the Collective Members and the Class Members are the basis for Defendant's business. Defendant retains pervasive control over the business operation as a whole, and putative Collective and Class.

50. Plaintiff, the Collective Members and the Class Members do not exert control over any meaningful part of Defendant's business operation and do not stand as a separate economic entity from Defendant. Defendant exercises control over all aspects of the working relationship with Plaintiff, the Collective Members and the Class Members.

51. Plaintiff's, the Collective Members', and the Class Members' economic status is inextricably linked to conditions over which Defendant has complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

52. Defendant exercises the following significant control over the work conditions of Plaintiff, the Collective Member and the Class Members:

    a. Defendants require Plaintiff, the Collective Member and the Class Members to routinely work in excess of 40 hours per week;

    b. Defendant pays Plaintiff, the Collective Members and the Class Members a flat hourly wage in exchange for the services that Plaintiff, the Collective Members and the Class Members provide Defendant's clients;

    c. Defendants direct Plaintiff, the Collective Members, and the Class Members with respect to where and when to work;

    d. Defendant requires Plaintiff, the Collective Members and the Class Members to wear a uniform;

    e. Defendant requires Plaintiff, the Collective Members, the Class Members to use Defendant's proprietary software which Defendant in turn uses to direct, control, monitor and supervise the work of Plaintiff, the Collective Members and the Class Members; and

53. Plaintiff, the Collective Members and the Class Members do not exercise the skill and initiative of a person in business for oneself;

54. Plaintiff, the Collective Members and the Class Members do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

55. Plaintiff, the Collective Members and the Class Members have no control over customers, nor do they actively participate in any efforts to increase Defendant's customer base or profit, or to improve business in any capacity.

56. Defendants do not permit Plaintiff, the Collective Members and the Class Members to hire or subcontract other qualified individuals to provide additional services to customers, thereby increasing their revenue, as an independent contractor in business for oneself would have the authority to do.

57. Plaintiff's, the Collective Members' and the Class Members' relative investment is minor when compared to the investment made by Defendant.

58. Plaintiff, the Collective Members and Class Members make no financial investment in Defendant's facilities, advertising, maintenance, staffing, and contractual relationships. All capital investment and risk belongs to Defendant.

59. Plaintiff's, the Collective Members' and the Class Members' investment is limited to the phone and/or computer necessary to utilize Defendant's software. Absent Defendant's investment and provision of the business, the Customer Service Agents would not earn anything.

60. Defendant manages all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff. Defendant provides all necessary capital to open and operate the business.

61. Plaintiff, the Collective Members and the Class Members have no responsibility for any aspect of Defendants' ongoing business risk.

62. Plaintiff, the Collective Members and the Class Members earn a flat hourly wage and have no opportunity to share in the profits or loss incurred Defendant in the operation of its business.

63. Plaintiff, the Collective Members and the Class Members have worked in excess of forty (40) hours per week in their work for Defendant.

64. Plaintiff, the Collective Members and the Class Members work for Defendant is not intended to be temporary or seasonal

65. Plaintiff, the Collective Members and the Class Members are critical to Defendant's success. Defendant's operation is wholly dependent on having Plaintiff , the Collective Members and the Class Members accessible and available to fulfill the customer service needs of Defendant's customers.

66. The primary "product" Defendant is in business to sell consists of the customer service provided by Plaintiff, the Collective Members and the Class Members.

67. Without the hourly work of its Customer Service Agents, Defendant would necessarily have no service to sell.

68. All actions and agreements by Defendant described herein were willful and intentional, and they were not the result of mistake or inadvertence.

69. Defendant was aware that the FLSA applies to its business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiff, the Collective Members and the Class Members were misclassified as independent contractors.

## FLSA COLLECTIVE ACTION ALLEGATIONS

70. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

71. Plaintiff brings the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

72. Plaintiff asserts those claims on behalf of herself, and on behalf of all similarly situated Customer Service Agents of Defendant, who were not paid all minimum wage or overtime compensation required by the FLSA during the relevant time period as a result of Defendant's compensation policies and practices.

73. Plaintiff seeks to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> **All Customer Service Agents (or individuals with other similar job duties or titles) who worked for Defendant while being classified as an independent contractor at any point from three years prior filing their consent to join this lawsuit through the present.**

74. Upon information and belief, Defendant has employed hundreds, if not thousands, of Customer Service Agents during the period relevant to this action.

75. The identities of these individuals, as a group, are known only to Defendant. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

76. Because these similarly situated workers are readily identifiable by Defendant and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

77. Collective adjudication is appropriate in this case because the individuals whom Plaintiff wishes to notify of this action have been employed in positions similar to Plaintiff; have performed work similar to Plaintiff; and have been subject to compensation practices similar to those to which Plaintiff has been subjected, including unlawful misclassification as an independent contractor and failure to pay overtime as required by the FLSA.

## CLASS ACTION ALLEGATIONS

78. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

79. Plaintiff brings his Colorado wage claims as a Rule 23 class action on behalf of the following Colorado Class Action Members:

> **All Customer Service Agents (or individuals with other similar job duties or titles) who worked for Defendant in Colorado while being classified as an independent contractor at any point from three years prior to the filing of this Complaint to the present.**

80. <u>Numerosity</u>. The number of Class Members is believed to be over one hundred. This volume makes bringing the claims of each individual Class Member before this Court impracticable. Likewise, joining each individual Class Member as a plaintiff in this action is impracticable. Furthermore, the identity of the Class Members will be determined from Defendant's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class Members and Defendant.

81. <u>Typicality</u>. Plaintiff's Colorado claims are typical of the Class Members because like the Class Members, Plaintiff was subject to Defendant's uniform policies and practices and was compensated in the same manner as the Class Members. Defendant regularly required Plaintiff and the Class Members to work in excess of 40 hours in a given workweek without paying

them overtime. Defendants misclassified Plaintiff and the Class Members as independent contractors. This was commonly, though not exclusively, done in order to prevent Plaintiff and the Class Members in accordance with the minimum wage and overtime requirements of Colorado law. As a result, Defendant failed to pay Plaintiff and the Class Members minimum wage and overtime in accordance with Colorado law.

82. <u>Adequacy</u>. Plaintiff is a representative party who will fairly and adequately protect the interests of the Class Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Colorado law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Class Action Members he seeks to represent.

83. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

    a. The number of hours worked by Plaintiff and the Class Members;

    b. The amounts paid to Plaintiff and the Class Members;

    c. The degree of control Defendant exerted over Plaintiff and the Class Members;

    d. The relative investments of Defendant compared to Plaintiff and the Class Members;

    e. The degree to which Plaintiff's and the Class Members' opportunity for profit and loss was determined by Defendant;

    f. The skill and initiative required in performing the job;

    g. The permanency of the relationship; and

  h.  The degree to which Plaintiff's and the Class Members' tasks are integral to Defendant's business.

84. Common issues of law include, but are not limited to:

  a.  Whether Defendant paid all minimum wages due and owing to Plaintiff and the Class Members;

  b.  Whether Defendant paid overtime wages due and owing to Plaintiff and the Class Members for all hours worked in excess of 40 in a given workweek;

  c.  Whether Defendant improperly misclassified Plaintiff and the Class Members as independent contractors;

  d.  Whether Plaintiff and the Class Members are entitled to compensatory damages;

  e.  The proper measure of damages sustained by Plaintiff and the Class Members; and

  f.  Whether Defendant's actions were "willful."

85. <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any of the Class Members could afford to pursue individual litigation against companies the size of Defendant, doing so would unduly burden the system.  Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits.  Prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

86. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and

comprehensive supervision by a single court and Judge. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Class Members are readily identifiable from Defendant's records.

87. This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees.

88. Ultimately, a class action is a superior forum to resolve the Colorado state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiff and the Class Members according to applicable Colorado laws.

89. <u>Nature of Notice to be Proposed</u>. As to the Rule 23 Class Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice." Notice of the pendency and resolution of the action can be provided to the Class Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## COUNT ONE: FAIR LABOR STANDARDS ACT
## FAILURE TO PAY MINIMUM WAGE OVERTIME

90. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

91. Defendant willfully failed or refused to pay Plaintiff and the Collective Members all minimum wages owed in connection with mandatory training programs which Defendant required Plaintiff and the Collective Members to complete.

92. Defendant willfully failed or refused to pay Plaintiff and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

93. As a result, Defendant failed to compensate Plaintiff and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

94. Defendant's practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required minimum and overtime wage rate violates the FLSA, 29 U.S.C. §§ 206 anf 207(a).

95. Defendant knew that – or acted with reckless disregard as to whether – Its failure to pay Plaintiff and the Collective Members the proper minimum wage and overtime rate would violate federal and state law, and Defendant was aware of the FLSA overtime requirements during Plaintiff's and the Collective Members' employment. As such, Defendant's conduct constitutes a willful violation of the FLSA.

96. Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Marcus Coleman-Jackson, individually, and on behalf of all Customer Service Agents similarly situated, respectfully requests that the Court grant relief in Plaintiff's favor, and against Defendant for compensation for unpaid minimum and overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT TWO: COLORADO MINIMUM WAGE LAW AND COMPS ORDER FAILURE TO PAY MINIMUM WAGE AND OVERTIME

97. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

98. Defendant failed or refused to pay Plaintiff and the Class Members the full Colorado Minimum wage for owed in connection with mandatory training programs which Defendant required Plaintiff and the Class members to complete.

99. Defendant failed or refused to pay Plaintiff and the Class Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

100. As a result, Defendant failed to compensate Plaintiff and the Class Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

101. Defendant's practice of willfully failing or refusing to pay Plaintiff and the Class Members at the required minimum and overtime wage rate violates the overtime provisions of Colorado law.

102. Defendant violated Colorado law by failing to provide Plaintiff and the Class Members with a compensated 10-minute rest break for every four hours worked and an uninterrupted meal break of at least 30-minutes for every five hours worked.

**WHEREFORE**, Plaintiff, Marcus Coleman-Jackson, on behalf of himself and all other similarly situated persons, respectfully request that this Court grant relief in Plaintiff's and the Class Members' favor, and against Defendant for compensation for all unpaid minimum and overtime wages, plus statutory damages, prejudgment and post-judgment interest, reasonable

attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

RESPECTFULLY SUBMITTED this 11th day of July, 2024.

SIMON LAW CO.

By: /s/ *James L. Simon*
James L. Simon (OH No. 0089483)
11 ½ N. Franklin Street
Chagrin Falls, Ohio 44022
Telephone: (216) 816-8696
Email: james@simonsayspay.com

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *James L. Simon*